# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **TIMMIE DAVIS** | * | **CIVIL ACTION NO. 09-01748** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN,** | * | **MAGISTRATE JUDGE** |
| **LOUISIANA STATE PENITENTIARY** | | **KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed on October 5, 2009, by pro se petitioner Timmie Davis ("Davis").  Docs. # 1, 6.  Davis is an inmate in the custody of the Louisiana Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary, Angola.  This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.  For reasons set forth below, it is recommended that the petition be **DENIED.**

## BACKGROUND

On February 17, 2003, officers from the Monroe Police Department ("MPD") responded to shots being fired at Alabama Street in Monroe.  The officers found the body of Yolanda Jefferson slumped over the steering wheel of a vehicle and observed a gunshot wound on the left side of her head.

Timmie Davis, Yolanda Jefferson's estranged boyfriend, approached the officers with his hands in the air and blood on his right arm.  The officers handcuffed him, advised him of his rights, and asked him where he had put his weapon.  He replied that the officers should not worry

about that but should instead call an ambulance for the victim.  A search of the area ultimately

yielded a semi-automatic handgun.

On March 14, 2003, a Ouachita Parish grand jury indicted Davis on a charge of second

degree murder.  At trial, the government called several officers from the MPD who testified

about responding to domestic violence complaints that Yolanda Jefferson had filed against

Davis.  The government also introduced the testimony of Lameesha Jefferson, the victim's next

door neighbor, who had observed Davis shoot Yolanda Jefferson while Yolanda was seated in

the driver's seat of her car, and Davis was standing outside of the car.

On May 25, 2005, Davis was found guilty of second degree murder.  He was

subsequently sentenced to a term of life imprisonment without the benefit of parole, probation, or

suspension of sentence.  On June 28, 2006, the Louisiana Second Circuit Court of Appeal

affirmed Davis' conviction and sentence.  *State of Louisiana v. Davis*, 935 So. 2d 763, 766 (La.

Ct. App. 2006).

After exhausting his state remedies, Davis argues that he should be granted relief under

28 U.S.C. § 2254 on the following bases: (1) insufficiency of the evidence[1]; (2) improper

admission of other bad acts evidence; (3) excessive sentence; (4) insufficient indictment; (5)

improper jury instructions on Davis' other bad acts; (6) inadequate notice regarding the state's

use of an inculpatory statement; (7) improper jury instructions on circumstantial evidence; (8)

---

[1] Davis argues that the evidence presented at trial is insufficient to uphold his conviction at two different parts of his brief to the court - "Assignment of Error No. 1" and "Claim No. 7." *See* doc. # 1 at 10-13, 29-31.  Although Davis specifically contends that Claim No. 7 is not an insufficiency of the evidence argument, Claim No. 7 makes the same points as Assignment of Error No. 1, which is labeled an insufficiency of the evidence argument.  Accordingly, the court will construe Claim No. 7 as an insufficiency of the evidence argument, and address it in the court's discussion of Davis' insufficiency of the evidence argument.

improper jury instructions on the elements of manslaughter; (9) ineffective assistance of counsel for his attorney's failure to investigate Lameesha Jefferson; and (10) cumulative effect of all errors committed by the state and his attorneys.  Davis also argued that his lawyer was ineffective in connection with claims 4, 5, 6, and 8.  Finally, Davis requested (11) an evidentiary hearing and the appointment of counsel for the hearing.  This court will consider each of Davis' arguments in turn.

## LAW AND ANALYSIS

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. § 2254, governs habeas corpus relief.  The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's]

3

decisions as of the time of the relevant state-court decision." *Id.* at 740.  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### 1. Insufficiency of the Evidence

Davis first contends that the evidence that the government introduced at trial was insufficient to support a conviction of second degree murder.  Davis specifically argues that the government did not present sufficient evidence to demonstrate that Davis acted with the requisite specific intent for second degree murder.  *See* La. Rev. Stat. Ann. § 14:30.1 A.(1) ("Second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.").

When a habeas petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

4

*Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence."  *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana Second Circuit invoked and applied the *Jackson* standard to the facts of this case.  *State of Louisiana v. Davis*, 935 So. 2d at 766-67.  The court concluded that the evidence presented at trial was sufficient to establish that Davis acted with the requisite specific intent for second degree murder.  *Id.* at 767.  In light of the substantial evidence that the government presented at trial on the issue of Davis' intent, the Louisiana Second Circuit's conclusion was not an objectively unreasonable application of the *Jackson* standard.

The following testimony and evidence would have allowed a rational trier of fact to find that Davis acted with the specific intent to kill the victim:

1. Officer Edward Waggoner of the MPD testified that he had been dispatched to the victim's residence on November 12, 2001 to respond to a phone call made by the victim.  R. at 269.  The victim told Officer Waggoner that Davis had previously come to her house to talk.  *Id.* at 270.  When the conversation turned into an argument, the victim asked Davis to leave.  *Id.* The victim told Officer Waggoner that Davis refused to leave, and then chased her around the living room of her house, throwing two vases at her, and missing both times.  *Id.*  According to the victim, Davis then took out a handgun, pointed it at her, and struck her in the head with it. *Id.* at 272.  Officer Waggoner noticed a "large laceration" on the right side of the victim's head.

5

*Id.*

2. The government introduced a copy of Davis' guilty plea to aggravated battery in connection with the November 12, 2001 incident. *Id.* at 276.

3. Officer Dennis Courtney of the MPD testified that he had been dispatched to the victim's residence on February 9, 2003, eight days before she was shot, to respond to a battery complaint that the victim had made against Davis. *Id.* at 194. At the residence, Officer Courtney spoke with both the victim and Davis. *Id.* The victim told Officer Courtney that Davis had grabbed her around the arms, and Officer Courtney noticed bruising on both of her arms. *Id.* at 195.

4. Officer Darren Canales of the MPD testified that he had been dispatched to a McDonald's in Monroe to investigate an assault complaint that the victim had made against Davis on February 11, 2003. *Id.* at 278. The victim told Officer Canales that she had recently received seven phone calls from Davis, and that Davis had "made a threat to her" in the last phone call. *Id.* at 278-79. Officer Canales subsequently spoke with a person who identified himself as Timmie Davis. This person admitted to making phone calls to the victim, but did not admit that he had threatened her. *Id.* at 279.

5. Lameesha Jefferson testified that she was the victim's next door neighbor. On February 17, 2003, the day of the shooting, Lameesha observed Davis and the victim arguing with each other. *Id.* at 281-82. The victim was seated behind the wheel of her car and Davis was outside of it, tapping on the window of the car and asking the victim to let him inside. *Id*. at 283. Lameesha then walked away from her window to wash her face in the bathroom. *Id.* at 284. While she was in the bathroom, she heard the victim scream, "Timmie, Timmie, no," which was

6

followed by a "loud noise." *Id.* at 284.  When Lameesha returned to the window, she saw Davis point his gun at the victim and shoot her. *Id.* at 285.  Lameesha subsequently testified on cross examination that she believed the loud noise that she heard was caused by Davis breaking the window of the victim's car. *Id.* at 288.

The testimony of Officers Waggoner, Courtney, and Canales demonstrated that Davis and the victim were involved in a very abusive relationship, and that Davis became increasingly violent towards the victim in the days prior to the shooting.  When viewing the Officers' testimony in conjunction with Lameesha Jefferson's testimony that she observed Davis point his gun at the victim and shoot her, a rational trier of fact could easily conclude that Davis possessed the requisite specific intent for second degree murder.

Davis contends that the horizontal - rather than downward - trajectory of the bullet through the victim's head, the location of the bullet's shell casing in the victim's car, and the undisputed fact that Davis broke the driver's window of the victim's car before the shooting occurred indicate that Davis accidentally killed the victim while falling through the window of her car.  However, even assuming, without finding, that Davis' theory is plausible, this court could not find that the Louisiana Second Circuit unreasonably applied the *Jackson* standard.  As previously stated, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  The Louisiana Second Circuit was clearly entitled to find that the government had presented sufficient evidence that Davis acted with the requisite specific intent in light of the testimony of Officers Waggoner, Courtney, and Canales, as well as the eyewitness testimony of Lameesha Jefferson.

7

**2. Other Bad Acts Evidence**

Davis appears to make two claims regarding the trial court's admission of evidence of Davis' prior crimes and bad acts.  First, he asserts that the trial court erred in admitting the testimony of Officers Waggoner and Courtney.  Doc. # 12 at 6; *see also* discussion on Davis' insufficiency of the evidence claim, *supra*.  Davis also argues that the trial court erred in admitting Officer Canales' testimony that Davis made an unspecified threat to the victim over the phone.  R. at 278-79.  Davis maintains that the government's failure to elicit from Officer Canales the nature of the threat that Davis made to the victim allowed the jury to draw the improper inference "that the defendant threatened to kill the victim."  Doc. # 12 at 6.

Evidentiary errors of state law are generally not cognizable in federal habeas review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Id*.

Davis' argument regarding the testimony of Officers Waggoner and Courtney fails because he has not provided the court with any evidence or argument that their testimony regarding his prior bad acts unfairly prejudiced him.  *See Orman v. Cain*, 228 F.3d 616, 619 (5th Cir. 2000) ("A habeas petitioner has the burden to prove that he is entitled to relief.").

Davis' argument regarding the testimony of Officer Canales fails as well because this testimony was not  "crucial, critical, and highly significant" to the state's case.  The state could have proven that Davis acted with the requisite intent for second degree murder without Officer Canales' testimony.  *See Jackson v. Johnson*, 194 F.3d at 656.  The testimony of Officers

Waggoner and Courtney, as well as that of Lameesha Jefferson, who testified that she observed Davis point his gun at the victim before he shot her, overwhelmingly demonstrated that Davis intended to kill the victim or to inflict great bodily harm.  Accordingly, neither the trial court nor the Louisiana Second Circuit unreasonably applied federal law in finding Officer Canales' testimony to be admissible.

### 3. Excessive Sentence

Davis' next argument is that the sentence he received - mandatory life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence - was unconstitutionally excessive because it "serves no other purpose other than the needless imposition of suffering."  Doc. # 12 at 7.  This argument, however, is unavailing.

Davis was convicted of second degree murder.  In Louisiana, "whoever commits the crime of second-degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."  LA. REV. STAT. ANN. § 14:30.1(B).  Moreover, "if a sentence is within the statutory limits," to obtain habeas relief a defendant must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion,' or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."  *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) (citation omitted)

Davis received the statutorily required sentence for second degree murder.  The sentence was not arbitrary and capricious, and also was not the product or an error of law that affected the sentencing judge's discretion because the Louisiana second degree murder statute does not give a sentencing judge any discretion to impose a sentence other than the one Davis received - "life

imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
Accordingly, Davis' sentence was not excessive and his contention that it "serves no other
purpose other than the needless imposition of suffering" is irrelevant to this court's review.

### 4. Insufficiency of the Indictment

Davis argues two errors related to his indictment.  First, Davis essentially contends that
his due process rights were violated on the following two bases: (a) only the foreperson of the
grand jury was present when his indictment was returned, and thus his indictment was not
returned in "open court" for purposes of LA. CODE CRIM. PROC. ANN. art. 383; and (b) the clerk
of court did not poll the jurors to determine whether they concurred in the indictment.  Second,
Davis contends that his trial counsel was ineffective for failing to object to the indictment itself,
which Davis alleges was defective because it failed to put him on adequate notice of the charge
he faced at trial.

In federal habeas review, a petitioner can prevail on a claim that his indictment was
insufficient "only when the indictment is so fatally defective that under no circumstances could a
valid conviction result from facts provable under the indictment . . . ."  *Johnson v. Estelle*, 704
F.2d 232, 236 (5th Cir. 1983).  This determination "can be made only by looking to the law of
the state where the indictment was issued."  *Id.*  Under Louisiana law, "a post verdict attack on
the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice
of the offense charged or failed to set forth any identifiable offense."  *State v. Williams*, 406 So.
2d 721, 723 (La. 1981); *State v. Storms*, 480 So.2d 135, 136 (La. 1981).

Under *State v. Williams*, Davis' due process claim, which challenges the procedures that
the state followed in returning and submitting his indictment, is not viable.  Furthermore, the

10

record establishes that the state did not violate Davis' procedural due process rights in returning and submitting his indictment.  The minutes from April 9, 2003 establish that the foreperson of the grand jury, Ms. Ramona Weeks, returned Davis' indictment to the court "on behalf of the Grand Jury," thereby satisfying the "open court" requirement of LA. CODE CRIM. PROC. ANN. art. 383.  R. at 3; *State v. Griggsby*, 42 So. 497, 499 (La. 1906) ("proceedings shall be held to be in open court while the judge is on the bench); *State v. Scrugs*, 116 So. 206, 217 (La. 1928) (stating that there is no requirement for all grand jurors to be present at the return of an indictment for the indictment to satisfy the "open court" requirement); *State v. Lewis*, No. 07-582, 2007 La. App. Unpub. LEXIS 298,  at * 31 (La. Ct. App. Oct. 31, 2007) (same).   In addition, Davis' indictment provided that "the grand jurors" charged him with the crime of second degree murder, thereby indicating that at least nine of the jurors concurred in the indictment, which is all that article 383 requires.  R. at 33.

Davis' ineffective assistance of counsel claim regarding his attorney's failure to object to his indictment also fails because Davis cannot prove that his indictment was defective in the first place.  In Louisiana, an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  LA. CODE CRIM. PROC. ANN. art. 464.  Davis' indictment provides:

> The grand jurors of Ouachita Parish, charge that, Davis, Timmie D., in the state and parish of aforesaid, did:
> Count 1 – second degree murder – on or about 17 Feb 2003
> Willfully and unlawfully commit second degree murder of Yolanda Jefferson, contrary to the provisions of R.S. 14:30.1.

R. at 33.  Although Davis' indictment did not include the specific elements of second degree murder, it undoubtedly gave him "fair notice of the offense charged" because the indictment

provided the name and citation of the crime that Davis was charged with committing, the name

of the victim, as well as the particular day that the crime occurred.  *See State v. Murff*, 39 So.2d

817, 821 (La. 1949) (an indictment is sufficient when it "inform[s] the accused of the nature and

cause of the offense with which he is being charged").  Furthermore, LA. CODE CRIM PROC. ANN.

ART. 465 specifically authorizes the short form indictment that the state used in Davis' case.

Accordingly, Davis' attorney would not have had any reasonable basis to object to the indictment

and therefore was not ineffective for not objecting to it.

### 5. Jury Instruction on Other Bad Acts Evidence

Davis' fifth claim relates to the limiting instruction that the trial judge submitted to the

jury pertaining to evidence of Davis' prior bad acts and crimes.  This instruction provided:

> Evidence admitted during the trial of other wrongful acts or crimes said to have
> been committed by the defendant is limited to possibly assisting you, the jury, in
> determining the defendant's intent or state of mind at the time of the alleged
> offense.  Such evidence may not be considered simply to depict the defendant as a
> person of bad character.

R. at 347.  Davis contends that the trial court erred in submitting this instruction and that his trial

counsel was ineffective for failing to object to this instruction because the proper instruction

would have advised the jury that "the defendant cannot be convicted for any charge other than the

one named in the indictment or one responsive thereto."  *See* Doc. # 12 at 9.

Challenges to jury instructions may not form a basis for federal habeas corpus relief

unless a petitioner proves that the improper instruction rose to the level of a constitutional

violation.  *Estelle v. McGuire*, 502 U.S. 62, 72.  Indeed, the only relevant inquiry for this court is

whether the "ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process."  *Id*.  Furthermore, when reviewing whether an allegedly erroneous jury

instruction violated due process, the trial court's instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.*

As an initial matter, the trial court was under no obligation to read Davis' proffered instruction to the jury.  Davis' proffered instruction tracks the language of the Louisiana state statutes, LA. REV. STAT. ANN. arts. 15:455 & 456, which were repealed in 1988.

Furthermore, the trial court's instruction was consistent with the relevant unrepealed Louisiana statute, LA. CODE EVID. ANN. art. 404(b), and the analagous federal rule, FED. R. EVID. 404(b).  Both of these rules provide, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent . . . ."

Accordingly, the trial court's limiting instruction pertaining to Davis' prior bad acts and crimes was consistent with both federal and state law.  In light of the consistency between the instruction and federal law, the instruction itself does not give rise to a successful claim for relief under 28 U.S.C. § 2254.  In light of the consistency between the instruction and both federal and state law, Davis' attorneys could not have been ineffective for not objecting to it.

### 6. Inculpatory Statement

Davis' next claim arises out of an inculpatory statement he made to the MPD when they arrived at the scene of the crime.  Davis argues that the state violated LA. CODE CRIM. PROC. ANN. art. 768 by not specifically disclosing the inculpatory statement that it planned to introduce at trial.  Accordingly, Davis appears to argue that the state violated his due process rights because

13

the state did not provide him with sufficient notice regarding their intended use of his inculpatory

statement.  Davis also argues that his attorney was ineffective for failing to object to the state's

alleged violation of article 768.

Davis' claims lack a factual basis.  The record indicates that the state disclosed the

inculpatory statement that it planned to use against Davis in its first supplemental answer to

Davis' motion for discovery and inspection.  R. at 40, ¶ 4.  Accordingly, Davis' due process

claim, and his ineffective assistance of counsel claim arising out of the due process claim, are

both meritless.

### 7. Jury Instruction on Circumstantial Evidence

Davis essentially argues that the trial court violated his due process rights by failing to

instruct the jury regarding circumstantial evidence.  However, this argument also lacks a factual

basis because the trial court provided the jury with a thorough and coherent instruction on how

they should assess circumstantial evidence.  R. at 343.

### 8. Jury Instruction on Manslaughter

As with the previous two claims, Davis' claim regarding the trial court's instruction to the

jury on the elements of manslaughter lacks a factual basis.  Davis argues that he was denied a fair

trial because the trial court failed to inform the jury that "sudden passion" and "heat of blood" are

elements of manslaughter.  Davis also argues that his attorney was ineffective for failing to object

to the trial court's allegedly defective manslaughter instruction.  However, the record clearly

indicates that the trial court advised the jury that manslaughter "is committed in sudden passion

or heat of blood immediately caused by a provocation sufficient to deprive an average person of

his self-control and cool reflection."  R. at 345-46.  Accordingly, Davis' claim regarding the trial

court's instruction on manslaughter is without merit.

### 9. Ineffective Assistance of Counsel

Davis argues that his attorneys, Jay Nolen and Louis Scott, were ineffective for failing to investigate Lameesha Jefferson, the only eyewitness to the shooting.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94.

Finally, in the specific context of a failure to investigate claim, a petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

15

Davis contends that if his attorneys had investigated Lameesha Jefferson, they would have questioned her properly when she testified at trial, and would have learned "crucial information" that would have allowed them to "avert the introduction of her inadmissible, damaging testimony."  Doc. # 1 at 32.  This argument, however, is unavailing.

As an initial matter, Davis has not proven that his attorney's performance was deficient.  Louis Scott's cross-examination of Lameesha Jefferson was rigorous and thorough.  At several points, Scott effectively tested Lameesha's credibility.  R. at 290-99.  Moreover, Scott's cross-examination of Lamesha revealed a knowledge of the context of her testimony that could have been acquired only through a pretrial investigation.  Indeed, Lameesha testified on cross-examination that she had met with Scott prior to trial.  R. at 289.

Furthermore, even if Davis could make the necessary showing under *Strickland*'s first prong, he would be unable to demonstrate prejudice under *Strickland*'s second prong.  His allegation that his attorneys would have learned "crucial information" had they properly investigated Lameesha Jefferson simply does not meet the specificity requirement of *United States v. Green*, 882 F.2d at 1003, and therefore does not demonstrate how he was prejudiced by his attorneys' allegedly deficient performance.

**10. Cumulative Error**

Davis' final claim alleges that the cumulative effect of all errors committed by the state court and by his counsel rendered his trial fundamentally unfair.  However, since Davis' other claims are meritless, no cumulative prejudice can be found.

**11. Request for an Evidentiary Hearing**

Under Rule 8(a) of the habeas Court Rules, "the judge must review the answer [and] any

transcripts and records of state proceedings . . . to determine whether an evidentiary hearing is warranted."  In making this determination, a federal court must consider whether a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Id.*  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

As the foregoing discussion indicates, the record demonstrates that none of Davis' claims have merit.  Accordingly, an evidentiary hearing and the appointment of counsel for the hearing are not warranted.

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (Docs. #1, 7) under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice**.  Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

17

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st day of June, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

18